## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SPECTRUM BRANDS INC.,

      Plaintiff, Counterclaim-
      Defendant,

    v.

TRISTAR PRODUCTS INC., KISHORE
MIRCHANDANI, individually and as trustee
of AM KARMA 2021 FAMILY TRUST,
ANJALI MIRCHANDANI, individually and
as trustee of KM KARMA 2021 FAMILY
TRUST, STEVEN SOWERS, as trustee of
AM KARMA 2021 FAMILY TRUST and
KM KARMA 2021 FAMILY TRUST, AM
KARMA 2021 FAMILY TRUST, KM
KARMA 2021 FAMILY TRUST, A&R
REALTY ENTERPRISES LLC, CENTRE
AVENUE LLC, AND MT. ANDERSON
LLC,

      Defendants, Counterclaim-
      Plaintiffs.

Civil Action No. 25-0046-RGA

## MEMORANDUM ORDER

Before me is Defendant Anjali Mirchandani's ("Anjali") and Defendant KM Karma 2021

Family Trust's ("KM Karma") Motion to Dismiss. (D.I. 61). I have considered the parties'

briefing. (D.I. 62, 89, 93). For the reasons set forth below, this motion is DENIED.

This case was brought in connection with an alleged fraud chiefly perpetrated by

Defendant Kishore Mirchandani ("Kishore"), founder and CEO of Defendant Tristar Products

("Tristar"). (D.I. 52 at ¶ 1). Plaintiff is alleged to have been fraudulently induced into buying

Defendant Tristar because of Defendant Kishore's scheme to falsely represent to Plaintiff that

1

Defendant "Tristar was a thriving business capable of generating tens—if not hundreds—of millions of dollars." (*Id.* at ¶ 3).

Defendant "Anjali was Kishore's wife at all relevant times, was on the board of directors of Tristar, and is a trustee of Defendant KM Trust." (*Id.* at ¶ 22). Defendant Anjali is a resident and citizen of Florida; Defendant KM Trust is a Florida trust and minority shareholder in Tristar. (*Id.*). Plaintiff brings this action against Defendants Anjali and KM Trust because "Anjali, as a director of Tristar, provided her written consent to and approval of the MIPA [Membership Interest Purchase Agreement], without which Kishore's fraud scheme could not have occurred [and] . . . knowingly caused the Trusts to be formed . . . for the purpose of receiving tens of millions of dollars in fraud proceeds." (*Id.*). Moreover, "Anjali, either individually or as trustee of KM [T]rust, owned and/or controlled one or more of the Real-Estate Companies that owned Tristar's office and warehouse space, which Defendants induced [Plaintiff] to agree . . . to lease under the MIPA, to its detriment." (*Id.*). As against Anjali and KM Trust, Plaintiff brings claims for Conspiracy to Commit Fraud, Aiding and Abetting Fraud, Unjust Enrichment, and Fraudulent Transfer. Defendants move to dismiss the counts against them under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. (D.I. 61).

Defendants argue that there are three reasons why Plaintiff is unable to invoke personal jurisdiction. First, the MIPA's forum-selection clause does not apply to Defendants. (D.I. 62 at 10-11). Second, neither the Delaware long-arm statute nor Constitutional Due Process concerns would permit the exercise of personal jurisdiction. (*Id.* at 4-10). Third, the Complaint fails to provide a basis for "conspiracy personal jurisdiction." (*Id.* at 11-13).

The MIPA's forum-selection clause states in pertinent part that "each party irrevocably submits to the exclusive jurisdiction of . . . the United States District Court for the District of

2

Delaware. . . for the purposes of any suit, action or other proceeding arising out of this Agreement." (D.I. 62-1 at § 10.15). Defendants argue that this provision is not applicable to Anjali or KM Trust, because "the MIPA makes clear [that the only] parties are HPC (now known as Empower), Tristar, Plaintiff, and Mr. Mirchandani. . . . By contrast, [Anjali] and KM Trust are not parties to the MIPA and, therefore, not subject to the MIPA's [forum-selection clause]." (D.I. 62 at 11). Plaintiff answers, "under Delaware law, even though [Anjali and KM Trust] were not parties to the MIPA, they are still bound by the [forum-selection clause]" because they were "closely related to the MIPA." (D.I. 89 at 3). Defendants reply, "This argument is directly contrary to binding Third Circuit precedent. As held in *In re: Howmedica Osteonics Corp*[.], 867 F.3d 390[, 407] (3d Cir. 2017), a forum-selection clause cannot be enforced against a non-signatory via the 'closely related parties' doctrine." (D.I. 93 at 1).

Defendants' argument misstates the law. If they mean to argue, as they do in their Reply Brief (*see* D.I. 93 at 1), that the forum-selection clause is not enforceable against Defendants, simply on the grounds that Defendants were not signatories to the MIPA, then more recent Third Circuit law clarifies that *Howmedica* did not discard the enforceability of forum-selection clauses against closely related parties. "*Howmedica* did not foreclose the [closely related parties] doctrine entirely and, indeed, proceeded to analyze whether the defendants there would constitute 'closely related parties[.]'" *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 62 n. 11 (3d Cir. 2018). If, on the other hand, Defendants are arguing, as they appear to do in their Opening Brief (*see* D.I. 62 at 11), that Defendants, as non-signatories, are not swept up in the scope of the forum-selection clause, then Defendants' threadbare arguments are similarly unavailing.

> The question of the scope of a forum selection clause is one of contract interpretation. Our case law directs us to use state law to determine the scope of a

3

> forum selection clause—that is, whether the claims and parties involved in the suit are subject to the clause. State law, therefore, typically governs whether the clause covers a particular claim, as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party. . . . [*See*] *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196-198 (3d Cir. 2001) (applying Delaware law to determine whether party was third-party beneficiary or closely related).

*In re McGraw-Hill*, 909 F.3d at 58 (cleaned up).

Section 10.14 of the MIPA states that the law governing the contract shall be that of "the internal laws of the State of Delaware." (D.I. 62-1 at § 10.14).[1] Defendants do not at all brief the issue as to whether Anjali and KM Trust are "closely related parties" to the MIPA under Delaware law. Having failed to brief this issue, Defendants have forfeited any argument in this case as to the scope or enforceability of the MIPA's forum-selection clause.[2] I find that Defendants are covered by the MIPA's forum-selection clause.

"[P]ersonal jurisdiction . . . is a waivable right . . . [and] parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King*

---

[1] It may be the case that Delaware's choice-of-law rules would mean that some other state's law should govern whether Defendants constitute "closely related parties" to the MIPA. Even if that is the case, Defendants did not brief or raise this issue on the Rule 12(b)(2) question, and the Third Circuit has found that "parties may waive choice-of-law issues" by failing to adequately "litigate the choice-of-law question before the District Court." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014). Defendants raise a question about applicable choice of law solely in reference to their Rule 12(b)(6) arguments, and even then, they concede that "it is appropriate to analyze the 12(b)(6) motion with reference to cases interpreting Delaware law." (D.I. 62 at 14-15).

[2] "[I]t is the responsibility of neither the District Court nor [the Appeals] Court to make the parties' arguments for them; therefore, we will not engage in a freewheeling investigation into . . . state law without meaningful briefing on the subject." *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017); "It is not the court's job to manufacture arguments or research for a party." *SurgiQuest v. Lexion Med., Inc.*, 2018 WL 2247216, at *2 n. 5 (D. Del. May 16, 2018).

*Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) (internal citations omitted). Defendants make no arguments about the negotiation of the MIPA or about the reasonableness of the forum selection clause. Similarly, they do not argue that any of the claims asserted against them are outside the scope of the MIPA's forum-selection clause. Their entire argument as to personal jurisdiction, including their arguments as to the scope of Delaware's long-arm statute or the applicability of conspiracy personal jurisdiction, hinges upon the mistaken presupposition that the forum-selection clause is inapplicable to them. (*See generally* D.I. 62 at 3-13; D.I. 93 at 1-5).[3] Since Defendants are in fact covered by the MIPA's forum-selection clause, all of Defendants' Rule 12(b)(2) arguments fail. I deny Defendants' Rule 12(b)(2) motion.

Defendants move to dismiss the claims against them under Rule 12(b)(6). I consider each count asserted against them in turn.

Count 3 against Defendants is for Conspiracy to Commit Fraud. (D.I. 52 at ¶¶ 193-197). Under Delaware law,[4] to state a claim of civil conspiracy, a plaintiff must plead:

> (1) A confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage. . . . To survive a motion to dismiss, a plaintiff need only plead sufficient facts to support an inference that Defendants acted in concert with one another. A complaint showing an alleged conspirator providing "substantial assistance" and working closely with the other defendant[s] infers an awareness of fraud and states a claim for civil conspiracy. But, this Court has also found facts pleading a significant "relationship" with the other defendants will satisfy a fair inference of the alleged conspirator's complicity in concerted misconduct.

---

[3] Since there exists a valid and applicable forum selection clause, "there is no need to perform a jurisdictional analysis under the Delaware long-arm statute and the Due Process Clause." *Cultural Experiences Abroad, LLC v. Colon*, 2024 WL 492683, at *5 (D. Del. Feb. 8, 2024). Similarly, I need not separately decide whether I may exercise personal jurisdiction over Defendants for Conspiracy to Commit Fraud under a conspiracy theory of personal jurisdiction, because I exercise personal jurisdiction pursuant to the forum-selection clause.

[4] Defendants concede that "it is appropriate to analyze the 12(b)(6) motion with reference to cases interpreting Delaware law." (D.I. 62 at 15).

5

*Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *19 (Del. Ch. Jan. 26, 2024) (cleaned up).

"A plaintiff alleging civil conspiracy must also prove 'knowing participation' among the conspiring partners." *Ogus v. SportTechie, Inc.*, 2023 WL 2746333, at *14 (Del. Ch. Apr. 3, 2023).

The law as summarized above appears to be well-settled. Defendants overreach, however, when they state, "a showing of 'knowing participation' requires more than just knowledge of the underlying tortious conduct; rather, it also requires a showing of 'substantial assistance.'" (D.I. 62 at 16 (citing *In re Oracle Corp. Derivative Litig.*, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020)). *In re Oracle*, however, only stated that "knowing participation" requires "substantial assistance" as an element of aiding and abetting fraud. *See In re Oracle*, 2020 WL 3410745, at *11. In contrast, a count for civil conspiracy to commit fraud does not require "substantial assistance." Delaware courts make a distinction between "participation" and "assistance," as the following passage, which Defendants themselves cite (D.I. 62 at 16), clarifies.

> [A] civil conspiracy claim requires a plaintiff establish that two or more persons combined or agreed *with the intent* to do an unlawful act or to do an otherwise lawful act by unlawful means. Stated differently, a plaintiff alleging civil conspiracy must prove "*knowing* participation" among the conspiring partners. Aiding and abetting similarly requires that the defendant "knowingly assisted" the fraud.

*Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 942 (Del. Super. Ct. June 27, 2024) (cleaned up).

This distinction between "aiding and abetting fraud" and "conspiracy to commit fraud," even if the two theories are usually treated "similarly" in Delaware law, nevertheless still matters.

> Our cases have viewed aiding and abetting as the larger, more encompassing theory, observing that because it focuses on assistance, rather than agreement, aiding-abetting rests on a broader conceptual base, one which may overlap

6

conspiratorial conduct, or exist independent of it. . . . There remains an important difference in emphasis between the two theories: Aiding and abetting is a cause of action that focuses on the wrongful act of providing assistance, unlike civil conspiracy that focuses on the agreement.

*New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 176-77 (Del. Ch. Mar. 9, 2023) (cleaned up).

Defendants' entire argument rests upon the incorrect assumption that the conspiracy claim can be defeated by showing that Plaintiff "merely allege[d] that [Defendants] perpetuated or furthered the alleged fraud by approving or consenting to the transaction . . . . [whereas Defendants' actions] could not have caused or assisted the fraudulent inducement." (D.I. 62 at 17). In other words, Defendants' arguments as to conspiracy to commit fraud assumes that Defendants cannot have "knowingly participated" unless they also provided "substantial assistance." (*See id.* at 16-18; D.I. 93 at 7-8). This assumption is incorrect. Defendants do not raise any argument, beyond the one relating to "substantial assistance," that they did not "knowingly participate" in the fraud. Their motion is denied with respect to Count 3.

Count 4 against Defendants is for Aiding and Abetting Fraud. (D.I. 52 at ¶¶ 198-204). Under Delaware law, the elements for aiding and abetting fraud are "(1) there is an underlying fraud; (2) [] the aiding and abetting defendants had knowledge of that fraud; and . . . (3) they provided substantial assistance." *MKE Holdings, Ltd. v. Schwartz*, 2026 WL 686567, at *20 (Del. Ch. Mar. 11, 2026). Substantial assistance entails "encouragement or assistance [that] is a substantial factor in causing the resulting tort." *In re Oracle*, 2020 WL 3410745, at *11.

Defendants dispute the third element. They argue, "Plaintiff merely alleges that [Defendants] perpetuated or furthered the alleged fraud by approving or consenting to the transaction at closing, and by transferring a portion of the sale proceeds . . . thereafter." (D.I. 62 at 17). Defendants contend that this is insufficient to establish "substantial assistance" for two

7

reasons. First, "because transfer of sale proceeds occurred after the transaction closed, the tortious conduct . . . would have already been committed . . . meaning the transfer of sale proceeds by [Defendants] could not have caused or assisted" the fraud. (*Id.* at 17). Second, "Plaintiff's allegations that [Defendants] consented to the transaction do not equate to a showing of substantial assistance. At most, it would merely demonstrate that after the purported fraudulent misrepresentations had already occurred, [Defendants] acquiesced to the transaction to which they were non-parties." (*Id.* at 17-18). "Delaware courts have rejected the notion that silence or inaction may qualify as substantial assistance, especially in the absence of any allegations suggesting that the defendants had a duty or obligation to speak or take action." (*Id.* at 17).

Defendants' arguments do not adequately address what Plaintiff actually pleads. Plaintiff pleads as to Defendant Anjali's part in this alleged fraud, "Anjali, as trustee of KM Trust caused the Trust[] to provide . . . express written consent to the MIPA prior to the Closing. Likewise, as a condition to the Closing, Anjali, individually as a Tristar board member, reviewed and gave her express written consent to the Acquisition." (D.I. 52 at ¶ 196). Similarly, Anjali "owned and/or controlled [various] Real-Estate Companies . . . [which] negotiated the leases with [Plaintiff] . . . and accepted millions of dollars in payments under the Leases, despite knowing the Leases were procured through . . . fraud." (*Id.* at ¶¶ 201-202). "These overt acts were crucial components of the Acquisition and underlying fraud, as the Leases were an express condition to the Closing under section 7.2(d) of the MIPA." (*Id.* at ¶ 202). Plaintiff states that "these allegations show affirmative acts, not mere 'silence' or 'inaction' as Defendants incorrectly state." (D.I. 89 at 16). In reply, Defendants miss the point of Plaintiff's argument and simply reiterate their contention that Defendants' "silence or inaction [under Delaware law] cannot constitute substantial

8

assistance unless there was a duty to take action or speak." (D.I. 93 at 8). This may be true, but the proper question is whether Defendants' pleaded role in the underlying fraud did in fact constitute "silence or inaction."

Defendants concede that "consent coupled in conjunction with allegations that the defendants negotiated the terms of the agreement . . .[is] sufficient to show substantial assistance." (*Id.* (citing *In re Live Well Fin., Inc.*, 2023 WL 3995900, at *13 (Bankr. D. Del. June 13, 2023))). While the present case is somewhat distinguishable from the facts of *Live Well Financial*, insofar as Defendants are not alleged to have negotiated the terms of the MIPA itself, Defendants ignore the fact that Plaintiff pleads that Defendants took an active role in negotiating various real estate leases, the execution of which constituted express conditions to the MIPA's closing. As MIPA Section 7.2 notes, "The obligations of Purchaser to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment prior to or at Closing of each of the following conditions."[5] (D.I. 62-1 at § 7.2). MIPA Section 7.2(d)(vii), detailing one such condition, reads, "Prior to or at the closing, Seller shall have delivered . . . leases, in substantially the forms attached hereto as Exhibit H." (*Id.* at § 7.2(d)(vii)). Defendants' pleaded role in negotiating these real estate leases cannot plausibly be characterized as mere "silence" or "inaction."[6] Defendants' motion to dismiss is denied as to Count 4.

Count 5 against Defendants is for Unjust Enrichment. (D.I. 52 at ¶¶ 205-208). Defendants' entire argument against this count is as follows, "Because there are no allegations of

---

[5] The language of MIPA Section 7.2 refutes Defendants' argument that any alleged substantial assistance rendered by Defendants "would have occurred after the underlying tortious conduct had already been committed by the other defendants." (D.I. 93 at 7). As executing the real-estate leases was a precondition to closing the MIPA, I do not accept Defendants' argument that negotiating these leases occurred after the underlying tortious conduct.

[6] Whether Defendants' other actions (*see* D.I. 52 at ¶¶ 200, 203) in relation to the alleged fraud constitutes "substantial assistance" is not something I need to decide at this stage.

fact showing that [Defendants'] conduct facilitated the alleged wrongdoing, Count V must be dismissed for failure to state a claim." (D.I. 62 at 18-19). Defendants are incorrect for much the same reason as discussed in connection with Count 4. Paragraph 208 of the Complaint specifically notes that Defendants, through the Real-Estate Companies, played a role in "negotiating the Leases." (D.I. 52 at ¶ 208). Moreover, "The execution of the Leases was a condition to Closing, and as such, the Acquisition and the fraud would not have occurred without the Real-Estate Companies' overt acts." (*Id.*). Defendants raise no other argument against unjust enrichment save that Defendants did not "facilitate" the fraud. As this argument is unavailing, Defendants' motion to dismiss is denied as to Count 5.

Count 6 against Defendants is one for Fraudulent Transfer. (D.I. 52 at ¶¶ 209-214). The crux of this Count is:

> Tristar transferred nearly all the Purchase Price proceeds that it had received . . . into bank accounts owned by Kishore and Anjali individually or the Trusts. . . . Each of [these transfers] . . . were fraudulent . . . because the transfers were made with actual intent to delay, hinder, or defraud Spectrum from obtaining the benefit of its bargain under the MIPA, including to frustrate Spectrum's ability to secure meaningful indemnity and recover its losses.

(*Id.* at ¶¶ 210, 212).

Defendants raise three arguments against Count 6.

First, Defendants argue that "this claim has not been pled with particularity as required by Rule 9(b)," because Plaintiff failed to plead "any allegations stating the amounts supposedly transferred to each defendant and the date and time of such transfers." (D.I. 62 at 19). Plaintiff correctly notes that it had pleaded that these fraudulent transfers occurred "within days of the Closing" and that Defendants had wired "nearly all the Purchase Price proceeds" (i.e., $325 million) "into bank accounts owned by them individually or the Trusts"; Plaintiff also listed the specific names of the accounts into which these proceeds were transferred. (D.I. 52 at ¶ 5).

10

Despite their protestations to the contrary, I do not see any case law cited by Defendants standing for the proposition that Plaintiff needed to have "alleged the exact amounts transferred and the exact date and time of the alleged transfers." (D.I. 93 at 8). Defendants contend that their "cited . . . legal support" for this proposition is Federal Rule of Civil Procedure Rule 9(b), which requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake." (*Id.* at 9). Defendants cite a case from the Delaware Court of Chancery interpreting Rule 9(b) of the Chancery Court Rules, but given that I am governed by the Federal Rules and not the Chancery Court Rules, any such case is completely irrelevant to deciding what the Federal Rules require.[7] Federal "Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, [but] plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *California Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (internal citations omitted). I think it is clear from the face of the complaint that Plaintiff has comported with this requirement by noting that the fraud took place "within days of the Closing" and that Defendants wired "nearly all the Purchase Price proceeds" into several specifically named accounts. (D.I. 52 at ¶ 5). At any rate, Defendants completely fail to cite any relevant case law suggesting that this pleading would be insufficient under Federal Rule 9(b). Defendants' first argument is unavailing.

Second, Defendants argue that Plaintiff failed to assert the "precise misconduct" undertaken by each defendant to satisfy the Rule 9(b) pleading standard and that Plaintiff instead

---

[7] At any rate, the Delaware Chancery case Defendants cite would not help them. It merely states that a plaintiff meets the particularity standard of Chancery Court Rule 9(b) "by pleading specific supporting facts describing the circumstances of the transfer, such as the who, what, and when of the challenged transfer." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *10 (Del. Ch. Sept. 5, 2023). There is nothing there requiring that a plaintiff allege "the exact amounts transferred and the exact date and time of the alleged transfers" as Defendants claim. (D.I. 93 at 8).

11

bundled together all Defendants in asserting its claim for fraud. (D.I. 62 at 19-20). I disagree. Plaintiff does not bundle together all Defendants but instead properly attributes to the individual Defendants their several instances of fraudulent conduct. The following extract serves as one example.

> Anjali, the Trusts, and Sowers knew before the Closing that sales of the Product Lines had plummeted, consumer demand was low and declining, and the Juicers, Wafflizers, and Air Fryers were defective. Anjali and Sowers also formed the Trusts as of December 31, 2021, prior to the Closing, for the purpose of receiving tens of millions of dollars in fraud proceeds from the Acquisition. Additionally, Anjali, as trustee of KM Trust, and Sowers, as trustee of AM Trust, reviewed the MIPA and caused the Trusts to provide, and the Trusts did provide, express written consent to the MIPA prior to the Closing. Likewise, as a condition to the Closing, Anjali, individually as a Tristar board member, reviewed and gave her express written consent to the Acquisition.

(D.I. 52 at ¶ 196).

I see nothing in this paragraph suggesting that Plaintiff failed to "aver conduct on the part of each defendant separately but [instead] pleaded [them] in an an-inclusive manner." (D.I. 62 at 19 (quoting *Chow v. Canyon Bridge Cap. Partners, LLC*, 2024 WL 3510917, at *18 (D. Del. July 22, 2024) (cleaned up)). Perhaps realizing the futility of this argument, Defendants do not even try, in their reply brief, to respond to Plaintiff's argument on this point. (*See* D.I. 93 at 8-9). I am not persuaded by Defendants' second argument.

Third, Defendants argue, "Plaintiff's attempt to plead constructive fraudulent transfer pursuant to 6 Del. C. § 1304(a)(2) is also deficient as Plaintiff has failed to raise any factual allegations in support." (D.I. 62 at 20). Defendants cite two Delaware Chancery cases and argue that "as illustrated in [these] cases . . . [Plaintiff's] allegations are insufficient unless substantiated with factual detail." (D.I. 93 at 9). Defendants cite no federal case law in support of their claim, however.

To the extent that Defendants' argument is merely a rehash that Plaintiff failed to assert its claims with the particularity required by Federal Rule 9(b), this argument fails, because I have already found that Plaintiff's pleading comports with those particularity requirements. To the extent that Defendants are arguing that Plaintiff must, pursuant to Delaware law, plead something beyond that which is required for Federal Rule 9(b) to state a claim for fraudulent transfer under 6 Del. C. § 1304(a)(2), any such extra-heightened pleading requirement under state law would be foreclosed by Federal Rule 9(b). *See Berk v. Choy*, 607 U.S. 187, 198-99 (2026).

Defendants' motion to dismiss as to Count 6 is denied.

Finally, Defendants argue that KM Trust, being a Florida trust, is not a suable entity. Defendants brief this question under Florida law. (D.I. 62 at 20; D.I. 93 at 9-10). In response, Plaintiff also briefs this question under Florida law. (D.I. 89 at 19-20). The briefing on this question from both sides is quite sparse. It is also misguided, as the issue should not be decided under Florida law.

Whether KM Trust is a suable entity should be determined according to Federal Rule 17(b), which determines the capacity of a party to sue or be sued in federal court. There appears to exist a broad consensus among district courts that Rule 17(b)(3) applies to trusts, because a trust is neither an "individual" nor a "corporation" as contemplated by Rules 17(b)(1) or 17(b)(2).[8] Under Rule 17(b)(3), therefore, the capacity of a trust to be sued is determined "by the

---

[8] Federal Rule of Civil Procedure 17(b) governs choice of law issues related to a party's capacity to sue or be sued. For individuals, this capacity (or lack thereof) is determined by the law of their domicile. Fed.R.Civ.P. 17(b)(1). For corporations, it is determined by the law of the jurisdiction in which the corporation is incorporated. Fed.R.Civ.P. 17(b)(2). For all other parties, it is determined by the law of the state where the court is located. Fed.R.Civ.P. 17(b)(3). Here, since the trust is neither an

13

law of the state where the court is located," which means that the issue should have been briefed under Delaware law. The parties have not done that.

It is Defendants' burden in bringing a Rule 12(b)(6) motion to show that Plaintiff failed to state a claim. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022). Defendants' failure to brief the issue means that they have failed to carry this burden. Were I to grant their motion as to KM Trust, I would effectively be finding that the fact that a trust is not suable under Florida law (assuming that that is a correct statement of law) means that it would similarly not be suable under Delaware law. One does not necessarily follow from the other. I deny Defendants' motion to dismiss the counts against KM Trust.

For the aforementioned reasons, Defendants' Motion to Dismiss (D.I. 61) under Rule 12(b)(2) and Rule 12(b)(6) is DENIED.

IT IS SO ORDERED.

Entered this 11th day of August, 2026

_____
United States District Judge

---

individual nor a corporation, the law governing whether the [trust] has the capacity to sue or be sued is governed by Arizona law, the state in which this Court sits. *Irwin Union Collateral Inc. v. Peters & Burris, LLC*, 2009 WL 5184902, at *3 (D. Ariz. Dec. 22, 2009); *see also Muller v. Zaibet*, 2024 WL 4483322, at *2 (S.D. Fla. July 25, 2024) (whether a trust has capacity to sue or be sued is determined by the law of the state where the district court is located); *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 2022 WL 4390636, at *5 (E.D. Tenn. Sept. 22, 2022) (same); *Blick v. Long Beach Mortg. Loan Tr. 2005-WL3*, 2013 WL 1319369, at *3 (W.D. Va. Mar. 29, 2013) (same).