**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPECTRUM BRANDS INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRISTAR PRODUCTS INC., KISHORE MIRCHANDANI, individually and as trustee of AM KARMA 2021 FAMILY TRUST, ANJALI MIRCHANDANI, individually and as trustee of KM KARMA 2021 FAMILY TRUST, STEVEN SOWERS, as trustee of AM KARMA 2021 FAMILY TRUST and KM KARMA 2021 FAMILY TRUST, AM KARMA 2021 FAMILY TRUST, KM KARMA 2021 FAMILY TRUST, A&R REALTY ENTERPRISES LLC, CENTRE AVENUE LLC, and MT. ANDERSON LLC,<br><br>Defendants. | Civil Action No. 25-46-RGA |

MEMORANDUM ORDER

Before me are a partial motion to dismiss (D.I. 65) and motion to strike (D.I. 63). I have considered the parties' briefing. (D.I. 66, 90, 95 for the motion to dismiss; D.I. 64, 88, 94 for the motion to strike). For the reasons set forth below, I DENY the motion to dismiss and GRANT the motion to strike.

## I. BACKGROUND

Plaintiff Spectrum Brands Inc. ("Spectrum") sued Defendants Tristar Products Inc. ("Tristar"), Kishore "Keith" Mirchandani ("Mr. Mirchandani"), Anjali Mirchandani ("Ms. Mirchandani"), Steven Sowers ("Mr. Sowers"), AM Karma 2021 Family Trust ("AM Trust"), KM Karma 2021 Family Trust ("KM Trust," and with AM Trust, the "Trusts"), A&R Realty

Enterprises LLC ("A&R"), Centre Avenue LLC ("Centre Avenue"), and Mt. Anderson LLC ("Mt. Anderson," and with A&R and Centre Avenue, the "Real Estate Companies"). The case arises from Spectrum's purchase of most of Tristar's kitchen appliance business. (D.I. 52 ¶ 1). The terms of this purchase were memorialized in the Membership Interest Purchase Agreement (the "Agreement"). (*Id.* ¶ 3). The parties to the Agreement were Tristar, Spectrum, Mr. Mirchandani, and Empower Brands LLC f/k/a HPC Brands LLC ("Empower"), "an entity carved out of Tristar that held most of Tristar's assets." (*Id.*). Under the Agreement, Spectrum acquired all membership interests in Empower. (*Id.* ¶¶ 3–4).

Spectrum pleads six counts against Defendants: (1) fraud against Tristar and Mr. Mirchandani (*id.* ¶¶ 177–86); (2) contractual indemnification against Tristar and Mr. Mirchandani (*id.* ¶¶ 187–92); (3) conspiracy to commit fraud against all Defendants (*id.* ¶¶ 193–97); (4) aiding and abetting fraud against Ms. Mirchandani, Mr. Sowers, the Trusts, and the Real Estate Companies (*id.* ¶¶ 198–204); (5) unjust enrichment against Ms. Mirchandani, the Trusts, and the Real Estate Companies (*id.* ¶¶ 205–08); and (6) fraudulent transfer against Tristar, Mr. Mirchandani, Ms. Mirchandani, and the Trusts (*id.* ¶¶ 209–14). Spectrum requests multiple forms of relief, including, relevant to this motion, an award of punitive damages. (*Id.* at 77).

Moving Defendants[1] now move to dismiss the case on four distinct grounds. (D.I. 66). Tristar and Mr. Mirchandani move to strike Spectrum's request for punitive damages. (D.I. 63).

## II. LEGAL STANDARDS

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused

[1] The Moving Defendants are Tristar, Mr. Mirchandani, AM Trust, Mr. Sowers, and the Real Estate Companies. Ms. Mirchandani and KM Trust are not movants here.

party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Rule 9 adds a heightened pleading standard for allegations of fraud. It states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). While courts have relaxed the requirements where the factual information is peculiarly within the defendant's knowledge or control, boilerplate and conclusory allegations will not

suffice. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Id.*

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). As a general matter, motions to strike are "disfavored and ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (internal citation and quotation marks omitted). "Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Sonos, Inc. v. D&M Holdings, Inc.*, 2016 WL 4249493, at *2 (D. Del. Aug. 10, 2016) (citing *Sun Microsystems*, 630 F. Supp. 2d at 402).

## III. DISCUSSION

### A. Motion to Dismiss

Moving Defendants seek partial dismissal of the case on four grounds: (1) dismissal of Mr. Sowers, AM Trust, and A&R for lack of personal jurisdiction (D.I. 66 at 4–14); (2) dismissal of AM Trust for lacking the capacity to be sued (*id.* at 4); (3) dismissal, for failure to state a claim, of Counts III–V as to their respective Defendants[2] and dismissal of Tristar and Mr. Mirchandani as to Count VI (*id.* at 8–20); and (4) dismissal of Count III as duplicative of Count IV (*id.* at 20). I address each ground in turn.

[2] Mr. Sowers is only named as a defendant in Counts III and IV. The Real Estate Companies are only named as defendants in Counts III–V. Dismissing Counts III–V would effectively dismiss these defendants from the case.

### 1. Personal Jurisdiction over Mr. Sowers, AM Trust, and A&R

Moving Defendants argue that this court does not have personal jurisdiction over Mr. Sowers, AM Trust, and A&R. The parties do not dispute that these parties are not subject to general jurisdiction in Delaware. (D.I. 52 ¶¶ 21, 23–24 (recognizing AM Trust as a Florida trust; Mr. Sowers as a resident and citizen of Pennsylvania; and A&R as a New Jersey LLC[3]); D.I. 66 at 4). Spectrum instead alleges that Delaware has specific personal jurisdiction over these parties on three separate grounds: (1) consent to jurisdiction due to a forum selection clause in the Agreement, (2) "conspiracy jurisdiction" due to their participation in a conspiracy to defraud Spectrum, and (3) jurisdiction under 10 Del. C. § 3104. (*Id.* ¶¶ 29–30). I address the first two grounds and determine that Spectrum has pleaded enough for both consent jurisdiction and the conspiracy jurisdiction. I decline to address the third argument.

#### a. Consent Jurisdiction

The Agreement provides that "each party irrevocably submits to the exclusive jurisdiction of [any Delaware court] for the purposes of any suit, action, or other proceeding arising out of this Agreement, any Document and any certificate delivered pursuant hereto or thereto." (D.I. 66-1 Ex. A (hereinafter, "Agreement") § 10.15). Spectrum's position is that Mr. Sowers, AM Trust,

---

[3] Delaware does not have general personal jurisdiction over an LLC that is not formed in and does not have its principal place of business in Delaware. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Moving Defendants do not challenge this court's jurisdiction over Centre Avenue and Mt. Anderson, which are both Delaware LLCs. (D.I. 52 ¶ 29(a); D.I. 66 at 4 n.4). These entities' presence in the case does not, however, destroy diversity jurisdiction. "[T]he citizenship of an LLC is determined by the citizenship of its members." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013)). Centre Avenue's members are Mr. Mirchandani and Mr. Sowers, and Mt. Anderson's members are Mr. Mirchandani, Mr. Sowers, and KM Trust. (D.I. 52 ¶¶ 25–26). None of these members are Delaware citizens. (*Id.*).

and A&R, while not signatories of the Agreement, are still bound by the consent to exclusive jurisdiction provision. (D.I. 52 ¶¶ 29(b), 30(a)).

Consent jurisdiction provisions are binding upon non-signatories when (1) the forum selection clause is valid, (2) the non-signatory is a third-party beneficiary or closely related to the agreement, and (3) the claim arises from the non-signatory's standing relating to the agreement. *Hadley v. Shaffer*, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003). A non-signatory is a third-party beneficiary when: (1) the contracting parties intended to benefit the third-party; (2) the benefit was intended as a gift or satisfaction of a pre-existing obligation; and (3) the intent to benefit was material to the purpose of entering the agreement. *Cúram, LLC v. Gray*, 2025 WL 733256, at *5 (Del. Super. Ct. Mar. 6, 2025). A non-signatory is "closely related" to an agreement when (1) "the party receives a direct benefit from the agreement" or (2) "it was foreseeable that the party would be bound by the agreement." *Id.* at *6. The foreseeability prong applies when it is "clear that the parties expected the forum selection provision to bind the non-signatory." *Id.* The foreseeability prong is satisfied only if the non-signatories have "a clear and significant connection to the subject matter of the agreement." *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *6 (Del. Ch. Sept. 18, 2019).

The parties agree that the forum selection clause is valid and that the claim arises from the non-signatories' standing relating to the Agreement. (D.I. 66 at 5–8; *see* D.I. 90 at 3). Moving Defendants focus on the second prong. (D.I. 66 at 5–8). Spectrum does not argue that the Moving Defendants are third-party beneficiaries.[4] Thus, the only issue in dispute is whether Mr. Sowers, AM Trust, and A&R are closely related to the Agreement.

---

[4] Moving Defendants contend that the Agreement disclaims any intent to benefit third parties. (D.I. 66 at 5–6 (citing Agreement §§ 6.5(b), 10.6)). Spectrum concedes this point in its opposition brief. (*See* D.I. 90 at 3–4).

**i. Direct Benefit**

Mr. Sowers and AM Trust. Spectrum alleges that AM Trust and Mr. Sowers, as trustee, are closely related to the Agreement because AM Trust received from the Agreement the direct benefit of "tens of millions of dollars in ill-gotten proceeds." (D.I. 52 ¶ 30(a)(vi); *see also* D.I. 90 at 6). Moving Defendants appear to argue that AM Trust's receipt of fraudulently obtained funds came "from the *breach* of the contract" or through a "separate agreement." (D.I. 66 at 7 (quoting *BAM Int'l LLC v. MSBA Grp. Inc.*, 2021 WL 5905878, at *12 (Del. Ch. Dec. 14, 2021); and *Neurvana*, 2019 WL 4464268, at *4)). Moving Defendants say that the Agreement "did not provide payment to AM Trust or require AM Trust's approval," and any "alleged benefits were 'simply events that happened to occur' after the agreement was signed." (D.I. 95 at 3 (quoting *Zausner Foods Corp. v. ECB USA, Inc.*, 2022 WL 609110, at *7 (D. Del. Jan. 31, 2022))).

I disagree. Spectrum alleges, "Sowers and AM Trust were required to, and did, provide their written consent to the [Agreement]." (D.I. 90 at 5–6 (citing D.I. 52 ¶ 30(a)). Spectrum says that AM Trust, a minority shareholder in Tristar (D.I. 52 ¶ 21), received proceeds of tens of millions of dollars through the transaction (D.I. 90 at 5–6 (citing D.I. 52 ¶ 30(a)). In reviewing a motion filed under Rule 12(b)(6), I must accept all factual allegations in the pleading as true and take them in the light most favorable to complainant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The pleadings are like those in *Hadley v. Shaffer*, where non-signatory shareholders, whose approval was required for a purchase agreement, consented to said agreement and received payment as part of the transaction. 2003 WL 21960406, at *5 (D. Del. Aug. 12, 2003). The *Hadley* court determined this constituted a direct benefit and the non-signatories thus were subject to the agreement's forum selection clause. *Id.* The same logic applies here.

A&R. Spectrum alleges it caused Empower to enter into leases with the Real Estate Companies, including A&R, as required by the Agreement. (D.I. 52 ¶ 29(b)(iii); D.I. 90 at 4 (citing D.I. 52 ¶ 156)). As a result, A&R had a tenant that "paid millions of dollars in rent each year and was responsible for paying all real estate taxes, utilities, and costs associated with cleaning and maintaining the leased property." (D.I. 52 ¶ 29(b)(iii)). This, according to Spectrum, constitutes a direct benefit and shows that A&R is closely related to the Agreement. Moving Defendants disagree. They state that tenancy "did not provide A&R any benefit it did not already have," as "A&R was entitled to rental income" even without the Agreement. (D.I. 66 at 6–7 (citing *Cúram*, 2025 WL 733256, at *2, *6); *see also* D.I. 95 at 2–3).

I agree with Spectrum. The pleadings here suggest that A&R obtained rental income beyond what it was entitled to. Empower leased from A&R an entire building in Fairfield, NJ. (Agreement at 210 of 265). Spectrum alleges that the "nearly all the real estate its new subsidiary Empower leased was "unusable" due to Tristar's "plummeting demand and lack of sales, all of which was hidden from Spectrum." (D.I. 52 ¶ 156). Spectrum explains that before the transaction, Empower "only use[d] a portion of the space in Fairfield" that it leased from A&R. (*Id.*). This is unlike *Cúram*. There, the lessor was entitled to rental income and in fact lowered the rental obligations for the new lessee. *Cúram*, 2025 WL 733256, at *6. Here, Spectrum's pleadings indicate that it is now leasing property beyond what Empower could use and what it could expect to receive through leases, in light of the business's circumstances. Renting out and receiving income for unusable property is a direct benefit to A&R.

**ii. Foreseeability**

Moving Defendants argue that it was not foreseeable that Mr. Sowers, AM Trust, and A&R would be bound by the Agreement. (D.I. 66 at 7–8). They state these non-signatories "did not

make the [representations, warranties, and covenants] at issue and were not involved in negotiations." (*Id.* at 8). They note that Mr. Sowers and AM Trust are not mentioned in the Agreement, and A&R "had its own agreement with Empower." (D.I. 95 at 4).

I think Spectrum has pleaded enough. As detailed above, Spectrum alleges that, as preconditions of closing on the Agreement, AM Trust and trustee Mr. Sowers had to provide written consent, and Spectrum had to cause Empower to sign a lease with A&R. (D.I. 52 ¶¶ 29(b), 30(a)). These parties have a "clear and significant connection" to the Agreement's subject matter: AM Trust, as a shareholder of Tristar, had to consent to the purchase, and A&R leased property to Spectrum's future subsidiary Empower so Spectrum could operate the business it purchased under the Agreement.

Thus, I conclude Mr. Sowers, AM Trust, and A&R are closely related parties and are therefore subject to the forum selection clause. I will nevertheless consider the alternative theory of "conspiracy jurisdiction."

**b. Conspiracy Theory of Jurisdiction**

Moving Defendants challenge Spectrum's conspiracy theory of personal jurisdiction over Mr. Sowers, AM Trust, and A&R. (D.I. 66 at 8–9). Under this theory, a conspirator who is absent from the forum state is still subject to the jurisdiction of the court when: "(1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy." *MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 508 (D. Del. 2012). Moving Defendants argue that

Spectrum fails to sufficiently plead the following factors: a conspiracy to commit fraud (D.I. 66 at 9–11) and a substantial act or effect in furtherance of the purported conspiracy that occurred in Delaware (*id.* at 11–13).

### i. Conspiracy to Commit Fraud

The elements of a conspiracy to commit fraud are "(i) a confederation or combination of two or more persons; (ii) an unlawful act done in furtherance of the conspiracy; and (iii) damages resulting from the action of the conspiracy parties." *Trusa v. Nepo*, 2017 WL 1379594, at *12 (Del. Ch. Apr. 13, 2017). Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud," applies to claims for conspiracy to commit fraud. *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993) (citing FED. R. CIV. P. 9(b)).[5]

Spectrum alleges that AM Trust and Mr. Sowers "knowingly entered into a confederation or combination with [Mr. Mirchandani] to commit fraud" (D.I. 52 ¶ 30(b)(i)) and furthered the fraud by forming AM Trust for the purpose of receiving the proceeds from the transaction, providing express written consent to the Agreement, and causing AM Trust to receive the proceeds (*id.* ¶ 30(b)(iii)). It also alleges that the Real Estate Companies, including A&R, "knowingly entered into a confederation or combination with Tristar to commit fraud" (*id.* ¶ 29(c)(i)) and furthered the fraud by negotiating, agreeing to accept, executing, and accepting millions of dollars in rental payments under the lease agreements (*id.* ¶ 29(c)(iii)).

Moving Defendants assert that Spectrum has not adequately plead any elements of a conspiracy to defraud. They compare Spectrum's pleadings to those in *In re SwervePay*

---

[5] Both parties cite *Agspring Holdco, LLC v. NGP X US Holdings, L.P.*, 2020 WL 4355555, at *21 (Del. Ch. July 30, 2020), for the pleading standard under Rule 9(b). (*See* D.I. 90 at 8; D.I. 95 at 4). *Agspring* discusses the pleading standard under the *Court of Chancery* Rule 9(b). I am disappointed that lawyers who appear in federal court would be seemingly unaware that federal law controls procedural matters such as pleading standards.

*Acquisition, LLC*. (D.I. 66 at 9–10 (citing 2022 WL 3701723, at *13 (Del. Ch. Aug. 26, 2022))). In *SwervePay*, the sellers argued that all buyers participated in the conspiracy "either (i) by participating in the negotiations of and communications about the Purchase Agreement . . . , (ii) by signing the Purchase Agreement and associated agreements, and (iii) by virtue of being an entity created . . . to accomplish the SwervePay acquisition." *SwervePay*, 2022 WL 3701723, at *13. The court rejected these allegations as "threadbare" and nothing more than "ordinary partnership in deal negotiations." *Id.*

I think, unlike the pleadings in *SwervePay*, Spectrum's pleadings provide each party's affirmative acts and explain how these acts further the conspiracy and are thus sufficient. Spectrum alleges that the Real Estate Companies negotiated and agreed to leases with Spectrum, as required for the acquisition to close. (D.I. 52 ¶ 195). Spectrum asserts that Mr. Sowers knew or was in a position to know the transaction contained false representations, warranties, and covenants because of his relationship with Tristar and Mr. Mirchandani (*see id.* ¶ 199), and his knowledge is imputed to AM Trust because he is the trustee (*id.* ¶ 30(b)(ii); *see also Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005) (citing *J.I. Kislak Mtg. Corp. v. William Matthews Builder, Inc.*, 287 A.2d 686, 689 (Del. Super. 1972), *aff'd*, 303 A.2d 648 (Del. 1972)) ("Delaware law states the knowledge of an agent acquired while acting within the scope of his or her authority is imputed to the principal.")). Mr. Sowers furthered the conspiracy by causing AM Trust to provide written consent to the transaction—a prerequisite to closing. (D.I. 52 ¶ 196). The Real Estate Companies, despite knowing the underlying transaction was fraudulent and the leases unnecessary, affirmatively entered into lease agreements with Empower. (*Id.* ¶¶ 195–96).

Moving Defendants also contend that Spectrum's damages pleadings for civil conspiracy are improper because its damages pleadings are the same as those for fraudulent inducement. (D.I.

66 at 10–11 (citing D.I. 52 ¶¶ 186, 197)). Moving Defendants say that courts have dismissed claims when the plaintiff alleges duplicative damages for two different claims. (*Id.* at 10 (citing *AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*, 2022 WL 16642020, at *13 (Del. Super. Ct. Nov. 3, 2022); *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017))). Spectrum contends that there is no need to "plead damages separate and distinct from the fraud claim" because "at the pleadings stage, 'there is little utility' in dismissing a fraud or civil conspiracy claim for redundancy." (D.I. 90 at 10 (quoting *Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *20 (Del. Ch. Jan. 26, 2024))).[6]

"A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FED. R. CIV. P. 8(d)(2); *see also Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 295 F. Supp. 2d 430, 438 (D. Del. 2003) ("Under Rule 8(e)(2), plaintiffs may plead alternative theories of relief based on the same set of facts."). There is no issue with Spectrum's pleading of two different theories for a claim for one amount of money. I thus decline to dismiss Spectrum's conspiracy claim here.

**ii. A Substantial Act or Substantial Effect**

Moving Defendants argue that Spectrum fails to show a substantial act or effect in furtherance of the conspiracy in Delaware. (D.I. 66 at 11–13). Spectrum pleads the following substantial acts and effects: The conspiracies created Delaware LLC Empower for the purpose of selling to Spectrum and caused Empower to suffer significantly diminished value. (D.I. 52 ¶¶ 29(c)(iv), 30(b)(iv)). Moving Defendants argue that Empower's creation and value diminishment were not substantial acts or effects because no negotiations occurred in Delaware

---

6 *See* footnote 5.

and transferring an ownership interest in a Delaware entity does not constitute a substantial act. (D.I. 66 at 11–12 (citing *VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, 2021 WL 4288506, at *9 (D. Del. Sept. 21, 2021); and *Deutsche Bank AG v. Devon Park Bioventures, L.P.*, 2021 WL 2711472, at *1 (Del. Ch. June 30, 2021))).

I am not persuaded by this reasoning. Moving Defendants frame the alleged specific act as a mere transfer of an ownership interest in a Delaware entity. Here, though, Spectrum alleges that Empower was formed *in furtherance of* the conspiracy. (D.I. 52 ¶¶ 29(c)(iv), 30(b)(iv)). "A single transaction is sufficient to confer jurisdiction where the claim is based on that transaction." *Arunachalam v. Int'l Bus. Machines Corp.*, 2021 WL 7209362, at *4 (D. Del. Dec. 29, 2021) (quoting *Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *11 (Del. Ch. Feb. 11, 2015)). In particular, Empower's formation in furtherance of the conspiracy confers personal jurisdiction. *See Virtus*, 2015 WL 580553, at *14. I need not address the alleged substantial effects. I think Spectrum sufficiently pleads this element.

**2. Whether AM Trust Has the Capacity to be Sued**

Defendants assert that AM Trust is not a separate legal entity, lacks the capacity to be sued, and therefore should be dismissed from the case. (D.I. 66 at 4; D.I. 95 at 2 n.1 (both instances citing *Mennen v. Wilmington Tr. Co.*, 2013 WL 4083852, at *9 (Del. Ch. July 25, 2013))). In *Mennen*, the court granted the trustee's motion to intervene and but did not dismiss the trust. 2013 WL 4083852, at *10. The trustees of AM Trust—Mr. Mirchandani and Mr. Sowers—are already parties to the case. At this stage, I see no reason to dismiss AM Trust.

### 3. Failure to State a Claim under Rule 9(b)

#### a. Count III: Conspiracy to Commit Fraud

As previously discussed *supra*, I think Spectrum adequately pleads conspiracy to commit fraud against the relevant Moving Defendants. I will not dismiss this count at this stage.

#### b. Count IV: Aiding and Abetting Fraud

A claim for aiding and abetting fraud must establish underlying tortious conduct, knowledge, and substantial assistance. *AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*, 2022 WL 16642020, at *11 (Del. Super. Ct. Nov. 3, 2022). Spectrum alleges that Mr. Sowers formed AM Trust and caused AM Trust to consent to the transaction. (*Id.* ¶ 203). In a similar vein, Spectrum alleges that the Real Estate Companies substantially assisted the fraud by negotiating, agreeing to, and executing leases that Spectrum would assume. (*Id.* ¶ 202).

Moving Defendants argue that Spectrum fails to allege that Mr. Sowers, AM Trust, and the Real Estate Companies provided substantial assistance. (D.I. 66 at 14–15 (characterizing the allegations as "awareness and silence")). Written consent and lease agreements, they say, did not substantially assist the alleged fraud of providing false representations, warranties, and covenants in the Agreement. (*Id.* at 15; *see also* D.I. 95 at 9). They cast these actions as insignificant because Mr. Sowers, AM Trust, and the Real Estate Companies did not participate in negotiating the Agreement. (D.I. 66 at 15, D.I, 95 at 9).

I disagree. The parties did not need to participate in the Agreement directly to provide substantial assistance to the underlying scheme. As Spectrum states, consenting to the Agreement and agreeing to leases were affirmative acts necessary for the acquisition and underlying fraud. (D.I. 52 ¶¶ 202–03). I do not dispose of this count here.

### c. Count V: Unjust Enrichment

To state an unjust enrichment claim, Spectrum must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) an absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). To plead "a relation between the enrichment and impoverishment," the plaintiff must show that "the defendant was unjustly enriched *by* the plaintiff who acted *for* the defendant's benefit." *Stein v. Wind Energy Holdings, Inc.*, 2022 WL 17590862, at *9 (Del. Super. Ct. Dec. 13, 2022). "Non-party relationships generally do not fit this paradigm," so to extend a claim of unjust enrichment to a non-party to a contract, the plaintiff must show that the non-party knowingly facilitated the alleged fraud. *Id.*

Spectrum alleges that AM Trust was unjustly enriched because it approved of and received proceeds from the transaction despite knowing of the fraud. (D.I. 52 ¶ 207). Similarly, it alleges that the Real Estate Companies were unjustly enriched when they retained full monthly rental payments from the leases despite knowing, due to the fraud, that the leases were unnecessary. (*Id.* ¶ 208). Moving Defendants discount these acts as "mere silence." (D.I. 66 at 16; D.I. 95 at 9). As explained above, I reject this position.

Moving Defendants present another argument: Spectrum did not act for the benefit of Mr. Sowers, AM Trust, and the Real Estate Companies. (D.I. 66 at 17; D.I. 95 at 9–10). They contend that by executing the Agreement, Spectrum acted for the benefit of Tristar, not Tristar shareholder AM Trust. (D.I. 66 at 17; D.I. 95 at 9–10). As for the Real Estate Companies, Defendants say that Spectrum could not have caused their unjust enrichment, as it was Empower, not Spectrum that first entered into the leases. (D.I. 66 at 17 (citing Agreement Ex. H)).

This argument relies on an overly rigid, narrow view of conveying benefits. It is shortsighted to suggest Spectrum acted for the benefit of Tristar but not its shareholders, or that Spectrum, as the parties' intended purchaser of Empower, did not provide benefit to the Real Estate Companies in the form of rental payments. Considering the substance of the Agreement and actual effects that Spectrum pleads, I do not dismiss this count.

#### d. Count VI: Fraudulent Transfer

Under 6 Del. C. § 1304(a); a transfer is fraudulent if a debtor makes the transfer:

> (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> a. Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

A claim for fraudulent transfer must comport with Rule 9(b) and be pled with particularity. *Chow v. Canyon Bridge Cap. Partners, LLC*, 2024 WL 3510917, at *18 (D. Del. July 22, 2024).

Spectrum alleges that days after the acquisition closed, Tristar transferred nearly all the proceeds from the purchase into bank accounts owned by Mr. and Ms. Mirchandani individually or to the Trusts. (D.I. 52 ¶ 210). It asserts that these transfers "were made with actual intent to delay, hinder, or defraud Spectrum from obtaining the benefit of its bargain under the [Agreement], including to frustrate Spectrum's ability to secure meaningful indemnity and recover its losses from Tristar."[7] (*Id.* ¶ 211; *see also id.* ¶ 212 (listing badges of fraud)).

---

[7] The Agreement provides that the Indemnity Escrow Amount as of the Closing Date is $50 million "if the R&W Insurance Policy has not been bound" as of the Closing Date, and $25 million if the policy "has been bound." (Agreement § 1.1). The issue appears to be, if necessary, whether Spectrum may obtain indemnification in excess of the escrow account from Tristar and Mr. Mirchandani.

Tristar and Mr. Mirchandani make two arguments in challenging Count VI. First, "Spectrum fails to plead specific facts describing the transfers, such as which parties received transfers, the amounts transferred, if any, to each party, and the date and time of the transfers." (D.I. 66 at 19–20). They compare the facts here to *Trusa*, in which the plaintiff failed to plead "who received what assets or where or when any such transfer of assets occurred." 2017 WL 1379594, at *11. I think this case is not like *Trusa*. Spectrum pleads a concise list of transferors and transferees; the transferred assets, origins, and amounts; and a reasonably specific timeline of the transfers, considering that Spectrum, at this stage, does not have access to the transferring parties' documents. As I see it, expecting pleadings with greater particularity would make bringing a claim for fraudulent transfer unreasonably onerous.

Second, Moving Defendants say Spectrum fails to "adequately allege Defendants intended to defraud it by frustrating its 'ability to secure meaningful indemnity.'" (D.I. 66 at 19 (citing D.I. 52 ¶ 212)). They reason that transfers to Mr. Mirchandani's accounts "could not frustrate Spectrum's indemnification" because he is jointly and severally liable for indemnification under the Agreement. (*Id.*). Defendants cite my decision from the related indemnification case. (*Id.* (quoting *Empower Brands LLC v. Tristar Prods., Inc.*, 2024 WL 5090532 at *4 (D. Del. Dec. 12, 2024))). In that case, I denied Empower's motion for leave to amend its claims against Trend Makers LLC (a party not named as a defendant here) because Empower could obtain sufficient indemnification from the parties already named, *i.e.*, Tristar and Mr. Mirchandani. 2024 WL 5090532 at *4. I address a different issue here: whether Spectrum pleaded an *intent* to defraud. Regardless of how the Agreement allocates indemnification liability, Defendants may have possessed the requisite intent. Spectrum identified several "badges of fraud" as set forth in 6 Del. C. § 1304(b), *e.g.*, that the transfers were between insiders, the amounts transferred, and the timing

of the transfers in relation to the acquisition. (D.I. 52 ¶ 213). Defendants do not rebut Spectrum's pleadings in support of intent to defraud. (D.I. 66 at 18–20; D.I. 95 at 10). I therefore see no reason to dismiss these parties on this count.

**4. Whether Count III is Duplicative of Count IV**

Moving Defendants ask that I dismiss Count III (conspiracy) because it is duplicative of Count IV (aiding and abetting). (D.I. 66 at 20 (citing *Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 945 (Del. Super. Ct. 2024); *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *17 (Del. Ch. May 18, 2009); *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *18 (Del. Ch. Dec. 20, 2012))). They say, "Spectrum predicates its conspiracy and aiding and abetting claims on the same conduct." (*Id.* (citing ¶¶ 194–95, 201–03)). They argue that "dismissal would narrow the issues against five defendants, and courts have dismissed duplicative claims at the pleading stage." (D.I. 95 at 4 n.3). Spectrum contends that Delaware state courts have allowed plaintiffs to bring both claims for conspiracy and aiding and abetting (D.I. 90 at 19–20 (citing cases)) and criticizes Moving Defendants' cited cases as inapposite and unsupportive (*id.* at 20).[8]

At this stage, I do not dismiss Count III. While Delaware courts recognize similarities between the theories of conspiracy to commit fraud and aiding and abetting fraud, there are meaningful distinctions between them. *Spectrum Brands Inc. v. Tristar Prods. Inc.*, 2026 WL 2322973, at *3–4 (D. Del. Aug. 11, 2026). I think these two counts are distinct because they allege different states of mind. (*Compare* D.I. 52 ¶ 194 (pleading knowledge of participating in a confederation or combination), with *id.* ¶ 202 (pleading knowledge of assisting in fraud)). When a party pleads both conspiracy and aiding and abetting based on the same underlying conduct,

---

[8] *See* footnote 5.

courts have decided not to dismiss one of these theories for duplicativeness. *See, e.g.*, *Spectrum*, 2026 WL 2322973, at *3–4; *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 341 (D. Del. 2017); *Royal Indem. Co. v. Pepper Hamilton LLP*, 479 F. Supp. 2d 419, 449–30 (D. Del. 2007).

**B. Motion to Strike**

Tristar and Mr. Mirchandani move to strike (D.I. 63) Spectrum's prayer for punitive damages (D.I. 52 at 77) based on the following provision in the Agreement:

> **Section 10.7 Limitation on Damages.** Notwithstanding anything to the contrary set forth herein, *no party hereto shall be liable for* (and the term Loss shall not include) any consequential damages that are not reasonably foreseeable as of the Closing Date, any indirect damages that are not reasonably foreseeable as of the Closing Date (including those based on a multiple of EBITDA (earnings before interest, taxes, depreciation and amortization) or any other financial metric (whether trailing, forward, or otherwise)) or *any punitive damages, in each case relating to any breach of this Agreement or right asserted in connection with this Agreement*.

(D.I. 66-1 Ex. A (Agreement) § 10.7) (italicization added). Tristar and Mr. Mirchandani argue that Delaware's strong interest in upholding the freedom to contract weigh in favor of their motion. (D.I 64 at 2–4 (citing cases where Delaware courts upheld clauses precluding certain damages)). Spectrum does not dispute these general tenets of Delaware contract law.

Spectrum presents two arguments against enforcing Section 10.7 in this way. First, Spectrum contends that the Agreement contains a provision, Section 3.32, that preserves the parties' rights to seek punitive damages for fraud-based claims. (D.I. 88 at 2–4). The relevant language of Section 3.32 states: "Notwithstanding anything to the contrary in this Section 3.32, nothing in this Agreement shall limit any liability for, or constitute any waiver with respect to, fraud." (Agreement § 3.32 (capitalization normalized)). Second, Spectrum asserts that Section 10.7, as a provision "limiting a party's liability for its own fraud," is "barred as a matter of Delaware public policy." (D.I. 88 at 6; *see id.* at 4–8).

I find neither argument persuasive. First, I disagree with Spectrum's reading of Sections 10.7 and 3.32. Spectrum's view is that Section 3.32 "trumps" Section 10.7 on punitive damages. (D.I. 3–4 (citing *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *20–21 (Del. Ch. Sept. 18, 2020))). I think Spectrum's reading renders part of Section 10.7 "of no effect" and reject this view in favor of one that gives effective meaning to both provisions. *See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." (quoting *Restatement (Second) of Contracts* § 203 (1981))). I read Section 3.32 as precluding limitations on "liability for" or "waiver with respect to" fraud, and Section 10.7 as precluding punitive damages. This means that Spectrum may bring fraud claims and seek some (but not all) forms of recovery. *Pilot Air*, which Spectrum cites, discusses the availability of certain claims, not damages. In that case, the court determined that despite a contract clause time-barring certain claims, the fraud preservation provision allowed the plaintiff to bring a claim for fraud. *Pilot Air*, 2020 WL 5588671, at *20–21. *Pilot Air* does not address *damages* available to the plaintiff.

Second, I do not see enforcement of Section 10.7 as against Delaware public policy. Spectrum asserts that "*any* provision limiting a party's liability for its own fraud is barred as a matter of Delaware public policy." (D.I. 88 at 6). This conflates the issues of liability and damages. In *ABRY Partners V., L.P. v. F&W Acquisition, LLC*, 891 A.2d 1032 (Del. Ch. 2006), the court ruled that when a seller procures a contract by fraud, the buyer could "press a claim for rescission or for full compensatory damages" instead of being limited to capped damages as

provided by the contract. *Id.* at 1036. In *ABRY*[9] and Spectrum's other cited cases (D.I. 88 at 5–7), courts decided not to enforce contractual provisions that capped damages or otherwise prevented plaintiffs from seeking full compensatory damages, not damages *beyond* full compensation. *See SPay, Inc. v. Stack Media Inc.*, 2021 WL 6053869, at *10 (Del. Ch. Dec. 21, 2021) (agreeing that a pro rata cap "for recovery on fraud claims is not enforceable as a matter of Delaware law if Defendants were aware of the fraud"); *Express Scripts, Inc. v. Bracket Holdings Corp.*, 248 A.3d 824, 829–32 (Del. 2021) (determining that recovery for deliberate fraud was not limited to the contract's provisions on representations and warranties); *St. Croix Renaissance Grp., LLLP v. St. Croix Alumina, LLC*, 2009 WL 5214326, at *12 (D.V.I. Dec. 23, 2009) (holding that if plaintiff proved fraud, it was "entitled to either rescission of the contract or full compensatory damages, notwithstanding the $3 million cap on defendants' liability contained in the [Purchase Sale Agreement]"). Spectrum does not show that public policy requires damages beyond full compensation to address instances of fraud.

Unlike in *Lincoln National Life Insurance Co. v. Snyder*, 722 F. Supp. 2d 546 (D. Del. 2010), where the court held that striking a punitive damages award was premature, *id.* at 565–66, the contract terms here are clear. I think that, as a matter of law, the contracting parties agreed not to seek punitive damages awards. Striking Spectrum's request for a punitive damages award does not—contrary to what Spectrum says—cause significant prejudice. (*See* D.I. 88 at 8). Spectrum may still seek full redress for its fraud claim through an award of monetary damages and other relief as necessary.

---

[9] As an aside, the agreement in *ABRY* contained an indemnification clause that excluded punitive damages as a possible remedy for any potential fraud disputes arising from said agreement. *ABRY*, 891 A.2d at 1044.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss (D.I. 65) is DENIED, and the motion to strike (D.I. 63) is GRANTED.

IT IS SO ORDERED.

Entered this 21st day of October, 2026

Richard G. Andrews
United States District Judge